UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

THOMAS G. SMITH,

    Plaintiff,

v.

Case No. 2014-CV-807

NICHOLAS P. STROIK and
VILLAGE OF ARENA,

    Defendants.

COMPLAINT AND JURY DEMAND

### *Introduction*

1.  Plaintiff Thomas G. Smith brings this civil rights action against Nicholas P. Stroik and the Village of Arena for the arrest and prosecution of Smith in retaliation for Smith's online Facebook comments criticizing the Village of Arena Police Department.

### *Parties*

2.  Plaintiff Thomas G. Smith is an adult currently residing in Statesville, Iredell County, North Carolina. At all times relevant to this Complaint, Smith resided in the Village of Arena, Iowa County, Wisconsin.

3.  Defendant Village of Arena is a municipality incorporated by the State of Wisconsin and located in Iowa County, Wisconsin.

4.  Defendant Nicholas P. Stroik was at all relevant times an adult resident of the State of Wisconsin, employed as a police officer by the Village of

Arena, and acting within the scope of his employment and under the Village's authority.

### *Jurisdiction and Venue*

5.  Smith asserts federal civil rights claims under 42 U.S.C. § 1983. Accordingly, this court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343.

6.  The court also has supplemental jurisdiction over Smith's state law claim because it is a part of the same case or controversy as Smith's federal civil rights claims. 28 U.S.C. § 1367.

7.  Venue in this court is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to Smith's claims occurred within Iowa County, Wisconsin, which is within the jurisdiction of the United States District Court for the Western District of Wisconsin.

### *Background*

8.  On or about July 19, 2012, members of the Village of Arena Police Department, including Defendant Stroik, canvassed Arena neighborhoods in search of several African-Americans suspected of burglary. Based on information and belief, the suspects were arrested later that night after a local resident apprehended them at gunpoint.

9.  On July 20, 2012, Defendant Stroik posted on the "timeline" portion of the Village of Arena Police Department's Facebook page a message thanking local residents for their assistance in arresting the suspects.

10. Several Facebook users later posted comments on the Facebook post. While some comments praised the work of the Village of Arena police, others were highly critical.

11. For example, one Facebook user, Kim Marks, responded sarcastically to Defendant Stroik's "thank you":

> You're so very welcome. Thanks for searching my house and accusing me of harboring so called dangerous fugitives, that I don't even know….wasting time searching peoples houses when the 'fugitives' were no where near there…and since when is it ok for a resident to point a gun at a couple if KID'S heads? If that was anyone else's kids pretty sure it would be a big deal. Oh wait though, they were black so It's ok. Thanks to everyone that made our town look like nothing but a racist, prejudice place to live..I'm embarrassed to say I'm part of that kind of community. If I were black I'd run too.

(all *sic*; ellipses in original).

12. A different Facebook user, Dana Willey, posted a comment that similarly accused a member of the Village of Arena Police Department of racism:

> And don't anybody say it isn't about race because it is when I ask the cop specifically what they look like and his response is they will stand out because they don't belong here.

(all *sic*). Willey later identified Defendant Stroik as the police officer who told her that the African-American suspects would stand out because they did not belong in Arena.

13. Smith then chimed in. He posted two Facebook comments echoing the view that the police were racist, and otherwise expressing his displeasure with how the officers handled the matter.

> Fuck the fucking cops they ant shit but fucking racist basturds an fucking all of y'all who is racist.
>
> …

3

> Fuck them nigers bitchs wat you got on us not a dam thing so fuck off dicks.

(All *sic*).

14. On July 22, 2012, Defendant Stroik found the above Facebook comments. Defendant Stroik then deleted not just Smith's comments, but also the comments of Marks and Willey criticizing the police. Defendant Stroik did not delete the few Facebook comments praising the police for its handling of the situation.

15. Defendant Stroik then requested that Smith be arrested and charged with two counts of disorderly conduct (Wis. Stat. § 947.01(1)), two counts of unlawful use of a telephone (Wis. Stat. § 947.012), and two counts of unlawful use of a computerized communication system (Wis. Stat. § 947.0125).

16. The Arena Police Department contacted Smith by telephone, asking him if he had posted the Facebook comments attributed to him. Smith told the police "I put it on there, I don't regret it and I mean it."

17. Later that evening, a member of the Arena Police Department arrested Smith at his home for disorderly conduct, unlawful use of a telephone, and unlawful use of a computerized communication system. Smith was then transported to Iowa County Jail, where he was held in custody until a bail hearing on July 23, 2012.

18. At the bail hearing, the court set bail conditions that, among other conditions, banned Smith from using a computer or phone unless to gain employment, and required him to provide the Iowa County Sheriff's Department with his computer passwords.

19. On August 10, 2012, the Iowa County District Attorney's Office filed a criminal complaint charging Smith with unlawful use of a computerized communication system and disorderly conduct. (*State v. Thomas G. Smith*, Iowa County Case No. 2012-CM-192).

20. On May 30, 2013, a jury found Smith guilty on both counts. The court entered convictions against Smith on June 10, 2013, and ordered Smith to 1 year of probation and 25 hours of community service, among other penalties.

21. Smith timely appealed his convictions. On July 3, 2014, the Wisconsin Court of Appeals ordered that the convictions be vacated and the charges dismissed, noting that there was no federal or state case law supporting the state's contention that the First Amendment would allow the criminalization of Smith's criticisms of the Village and its officers. *State v. Smith*, No. 2013AP2516 (Wis. App. July 3, 2014) (Lundsten, J.) (*unpublished*). The circuit court formally vacated the convictions and dismissed the charges on August 8, 2014.

### Count I: Defendant Stroik
### Federal § 1983 Claim - Retaliatory Arrest

22. The allegations of paragraphs 1-21 above are repeated and re-alleged as if set forth fully herein.

23. At all relevant times Defendant Stroik was acting under the color of the laws of the State of Wisconsin.

24. The content of Smith's Facebook comments was protected by the First Amendment to the United States Constitution, as incorporated against the states through the Fourteenth Amendment.

5

25. Defendant Stroik's decision to seek the investigation and arrest of Smith was motivated at least in part by a desire to retaliate against Smith for his protected First Amendment speech.

26. Defendant Stroik's actions in support of Smith's arrest caused Smith to suffer deprivations that would likely deter First Amendment speech.

27. Defendant Stroik's actions were not supported by probable cause that Smith committed a crime.

28. Defendant Stroik's actions in support of Smith's arrest violated Smith's First Amendment rights.

29. Defendant Stroik's violation of Smith's First and Fourteenth Amendment rights damaged Smith and entitle him to compensatory damages recoverable under 42 U.S.C. § 1983, including but not limited to mental and emotional distress, loss of liberty, pain and suffering, lost wages, diminished earning capacity, and legal expenses.

30. Defendant Stroik's violation of Smith's First and Fourteenth Amendment rights were done with malicious intent, or callous or reckless disregard for Smith's rights, and entitle Smith to recover punitive damages under 42 U.S.C. § 1983.

**Count II: Defendant Stroik**
**Federal § 1983 Claim – False Arrest**

31. The allegations of paragraphs 1-30 above are repeated and re-alleged as if set forth fully herein.

32. Defendant Stroik's actions in support of Smith's arrest without probable cause that Smith committed a crime violated Smith's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

33. Defendant Stroik's violation of Smith's Fourth and Fourteenth Amendment rights damaged Smith and entitle him to compensatory damages recoverable under 42 U.S.C. § 1983, including but not limited to mental and emotional distress, loss of liberty, pain and suffering, lost wages, diminished earning capacity, and legal expenses.

34. Defendant Stroik's violation of Smith's Fourth and Fourteenth Amendment rights were done with malicious intent, or callous or reckless disregard for Smith's rights, and entitle Smith to recover punitive damages under 42 U.S.C. § 1983.

## Count III: Defendant Stroik
### Federal § 1983 Claim – Retaliatory Inducement to Prosecute

35. The allegations of paragraphs 1-34 above are repeated and re-alleged as if set forth fully herein.

36. Retaliation for Smith's protected First Amendment speech – the content of his Facebook comments – was a motivating factor in Defendant Stroik's decision to seek the prosecution of Smith.

37. Defendant Stroik's retaliatory actions, including but not limited to his request that charges be brought against Smith, were a but-for cause of Smith's prosecution in *State v. Thomas G. Smith*, Iowa County Case No. 2012-CM-192.

38. Defendant Stroik's actions in support of Smith's prosecution caused Smith to suffer deprivations that would likely deter First Amendment speech.

39. Defendant Stroik's actions were not supported by probable cause that Smith committed a crime.

40. Defendant Stroik's actions in support of Smith's prosecution violated Smith's First Amendment rights.

41. Defendant Stroik's violation of Smith's First and Fourteenth Amendment rights damaged Smith and entitle him to compensatory damages recoverable under 42 U.S.C. § 1983, including but not limited to mental and emotional distress, loss of liberty, pain and suffering, lost wages, diminished earning capacity, and legal expenses.

42. Defendant Stroik's violation of Smith's First and Fourteenth Amendment rights were done with malicious intent, or callous or reckless disregard for Smith's rights, and entitle Smith to recover punitive damages under 42 U.S.C. § 1983.

### Count IV: Defendant Village of Arena
### Federal § 1983 Claim – Unconstitutional Policy

43. The allegations of paragraphs 1-42 above are repeated and re-alleged as if set forth fully herein.

44. At all times relevant to this complaint, the Village of Arena Police Department's Facebook page was an online forum that allowed the Department and local residents (among others) to comment publicly on matters related to the

activities and policies of the Village of Arena Police Department. (The Facebook page has since been deleted.)

45. Defendant Stroik was an "administrator" of the Village of Arena Police Department's Facebook page, and as such had the ability to publish posts on the "timeline" portion of the Facebook page, and delete comments to such posts made by other Facebook users.

46. When a Facebook user posts a comment on a timeline post, his or her Facebook "friends" may see in their Facebook "news feed" page both the original timeline post as well as their friend's comment on the post.

47. Thus, by posting a comment on a Facebook timeline post, a Facebook user is expressing their view not just to the original audience of the Facebook timeline post, but to all of their Facebook friends as well.

48. The Village of Arena failed to adequately train Defendant Stroik on the protections afforded by the First and Fourteenth Amendments to comments made on the Village of Arena Police Department's Facebook page by other Facebook users.

49. For example, Defendant Stroik deleted all of the Facebook comments criticizing the Village of Arena Police Department, including the comments of Marks and Willey, but left up all of the comments praising the Department. Whether the Department's Facebook page was a traditional public forum, a designated forum, or a nonpublic forum, such viewpoint discrimination violates the First and Fourteenth Amendments.

50. Given the ever-increasing popularity of Facebook and other social media as the means of communication between the public and their government, the Village of Arena's failure to adequately train Defendant Stroik amounts to deliberate indifference to an obvious need for such training, which is likely to result in incorrect decisions.

51. As a result of the Village of Arena's failure to adequately train Defendant Stroik, Defendant Stroik initiated the arrest and prosecution of Smith in violation of his rights under the First, Fourth, and Fourteenth Amendments, as described in the paragraphs above.

52. The Village of Arena's failure to adequately train and Defendant Stroik violated Smith's rights under the First, Fourth, and Fourteenth Amendments.

53. The Village of Arena's violation of Smith's First, Fourth, and Fourteenth Amendment rights damaged Smith and entitle him to compensatory damages recoverable under 42 U.S.C. § 1983, including but not limited to mental and emotional distress, loss of liberty, pain and suffering, lost wages, diminished earning capacity, and legal expenses.

### Count V: Defendant Village of Arena
### State Claim – Indemnification

54. The allegations of paragraphs 1-53 above are repeated and re-alleged as if set forth fully herein.

55. The acts of Defendant Stroik complained of in this matter were committed while Defendant Stroik was carrying out his duties as an employee of the Village of Arena.

56. At all relevant times, Defendant Stroik was acting within the scope of his employment with the Village of Arena.

57. The Village of Arena is statutorily required to pay the judgment against Defendant Stroik in this matter. Wis. Stat. § 895.46.

WHEREFORE, Plaintiff Thomas G. Smith requests a judgment in his favor granting him the following relief:

1. As to Defendant Stroik,
    a. Compensatory damages;
    b. Punitive damages;
    c. Reasonable attorneys' fees, costs, and litigation expenses; and
    d. Any other relief this Court deems just and appropriate.

2. As to Defendant Village of Arena:
    a. A judgment holding Defendant the Village of Arena jointly and severally liable for the judgment against Defendant Stroik as his indemnitor under Wis. Stat. § 895.46;
    b. Compensatory damages;
    c. Reasonable attorneys' fees, costs, and litigation expenses; and
    d. Any other relief this Court deems just and appropriate.

**JURY DEMAND**

Smith demands a trial by jury on all issues so triable.

        Respectfully submitted,

        THOMAS G. SMITH,
        by his attorney,

        <u>/s/ Thomas B. Aquino</u>
        Thomas B. Aquino

        Aquino Law LLC
        131 W. Wilson Street, Suite 1201
        Madison, WI 53703
        Phone: (608) 251-6735
        Fax: (608) 338-0892
        Email: tom@aquino-law.com
        State Bar No. 1066516

        Dated: November 24, 2014